UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LINDA L.,[1]

                                              Plaintiff,                    Case # 23-cv-00114-FPG

v.                                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                             Defendant.
_____

## INTRODUCTION

On August 9, 2017, Plaintiff Linda L. filed an application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr. 222.[2] The Social Security Administration (the "SSA") denied her claim and Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Steven Cordovani on August 18, 2020. Tr. 85-145. On November 27, 2019, the ALJ issued an unfavorable decision. Tr. 8-31. The Appeals Council denied Plaintiff's request for review on April 1, 2020. Tr. 1. Plaintiff then appealed to the Western District of New York and on September 13, 2021, the case was remanded to the SSA for further proceedings. Tr. 1955. Plaintiff appeared before the ALJ for a second administrative hearing on October 4, 2022. Tr. 1851-73. The ALJ issued a second unfavorable decision on October 31, 2022. Tr. 1874-97. After the decision became final, Plaintiff appealed to this Court on February 2, 2023. ECF No. 1.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 3, 4, 5.

Plaintiff and the Commissioner both moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 10. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her

past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2016. Tr. 1826. At step two, the ALJ found that Plaintiff has the following severe impairments: cerebral aneurysm, non-ruptured; sequela from a cerebral infarction due to thrombosis; unspecified headaches; migraine headaches; asthma; anxiety; and depression. *Id*. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet(s) or medically equal(s) the severity of one of the Listings. *Id*. at 1827. The ALJ determined that Plaintiff maintained the RFC to perform "medium work as defined in 20 CFR 404.1567(c) except she cannot climb ladders ropes or scaffolds. The claimant cannot work around hazards, such as, unprotected heights or dangerous moving mechanical parts. She can tolerate no exposure to flashing lights or bright lights, defined as light in greater intensity than observed in regular business or retail settings or outdoors. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory irritants. The claimant is able to understand, remember and carry out simple instructions and tasks with minimal changes in work routine and processes and no supervisory duties or independent decision-making." *Id.* at 1830. In formulating the RFC, the ALJ considered the symptoms that Plaintiff alleged. *See Id.* at 1830-40. The ALJ also evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms. *Id.*

At step four, the ALJ concluded that Plaintiff was not able to perform any past relevant work. Tr. 1840. At step five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform. Tr. 1841. As such, the ALJ found that Plaintiff was not disabled, as defined under the regulations.

## II.   Analysis

Plaintiff argues that the ALJ did not properly consider the opinion of her treating Physician Assistant Nancy Lance ("PA Lance"). Plaintiff contends that the ALJ would have found PA Lance's opinion persuasive if he properly considered the consistency and supportability factors. Plaintiff argues that this procedural error was not harmless because PA Lance opined that Plaintiff had limitations in her ability to concentrate that would have resulted in a finding of disability had the ALJ included them in the RFC. *See* ECF No. 6-1 at 14-23. The Court agrees.

The ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

The ALJ must "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. *See* 20 C.F.R. 404.1520c(a). An ALJ is specifically required to "explain how [they] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative

medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ did not examine what PA Lance used "to support [her] opinion[] and reach [her] ultimate conclusion." *See* Tr. 1839-40; *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021). As a result, he "failed to apply or even consider the supportability factor." *Id.* This amounts to legal error. *See id.* at *15 ("Because the ALJ failed to address the supportability factor ... the ALJ committed legal error by failing to apply the proper legal standards in the form of the post-March 26, 2017 SSA regulations."); *see also Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (Because the ALJ "failed to apply or even consider the supportability factor," the court concluded that "this amount[ed] to legal error.").

Turning to the consistency factor, the ALJ's analysis is also wanting. While the ALJ discussed those portions of the record that created purported inconsistencies with PA Lance's opinion, he did so by "selectively rel[ying] on portions of the record that" supported his own opinion "without even addressing the weight of the evidence supporting the fact that [Plaintiff] continued to have serious symptoms." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). For instance, the ALJ highlighted that PA Lance's opinion was inconsistent with the fact that Plaintiff's treating neurologist recommended no treatment for her aneurysm from April 2019 until August 2022. Tr. 1840. However, the ALJ ignored that the treating neurologist did not recommend treatment "due to the patient's high risk nature of repeat endovascular treatments

in the setting of her prior stroke following her previous coiling procedure." Tr. 2179. Further, at varying medical visits during that period, doctors remarked "evidence of [i]nstent stenosis," Tr. 2185, and indicated concern that ongoing distress symptoms "may be recrudescence of prior stroke symptoms," Tr. 2189, until finally, and despite "reticence to undergo additional treatments given the issues with the stent coiling the first time," Plaintiff's condition was serious enough that the treating neurologist insisted that her condition "ought to be treated." Tr. 2193. Specifically, the doctor noticed that she had "at least 2 aneurysms" that were growing, and a "growth in the right ICA terminus aneurysm that is[sic] been documented now over 3 looks." *Id.* In its full context, the lack of treatment was not an indication of lack of disease or illness, but rather an indication of the grave complexity of Plaintiff's various ailments.

The ALJ also concluded that PA Lance's opinion was inconsistent with Plaintiff's "lack of persistent complaints." Tr. 1840. However, this ignores the repeated visits Plaintiff made to the doctor complaining of headaches, dizziness, blurred vision, numbness, spasms and weakness, etc. *See* Tr. 451-52 (In September 2017, complaining of memory loss and headaches); Tr. 1381 (In September 2018, complaining of headaches without improvement from medications, and reporting an inability to get out of bed); Tr. 1384-85 (In March 2019, complaining of dizziness and vertigo); Tr. 943 (In November 2017, complaining of right-sided weakness and facial numbness); Tr. 1180-97 (In January 2018, complaining of headaches, intermittent blurred vision, neck pain, and right lover extremity weakness); Tr. 2179 (In September 2019, complaining of terrible headaches and vision changes); Tr. 2182 (In October 2019, complaining of depression and headaches); Tr. 2184 (In March 2020, complaining of right arm spasms, shaking and intermittent weakness); Tr. 2187 (In February 2021, complaining of gait imbalance and thumping in her ears and left-sided leg and foot coldness); Tr. 2191 (In December 2021, complaining of dizziness and nausea). This cherry-

picked analysis of Plaintiff's complaints is an indication of improperly considering the consistency factor. *See Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) (finding error where the ALJ had "overlook[ed] or mischaracterize[ed] relevant evidence.").

The ALJ also relied on Plaintiff's daily activities—cooking, cleaning, washing laundry, shopping, socializing with family and friends weekly without difficulty, handling her finances, and driving—as a point of inconsistency with PA Lance's opinion. Tr. 1840. However, it is "well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Scitney v. Colvin*, 41 F. Supp. 3d 289, 304 (W.D.N.Y. 2014) (quoting *Stoesser v. Comm'r of Soc. Sec.*, No. 08–CV–643, 2011 WL 381949, at *7 (N.D.N.Y. Jan. 19, 2011)). In fact, activities of daily living are not the same as working and performing "activities on a full-time basis," *Oswald v. Comm'r of Soc. Sec.*, No. 17-CV-6621P, 2019 WL 2610711, at *7 (W.D.N.Y. June 26, 2019), and so it stands to reason that such activities cannot serve as the basis for demonstrating an inconsistency with a medical opinion.

Despite the ALJ's procedural error, the Court may affirm if "'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed.'" *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). Here, however, the Court cannot conclude that the ALJ's procedural error was harmless. The ALJ did not address the fact that PA Lances opinion, indicated that Plaintiff has marked impairment for "the ability to maintain attention and concentration." Tr. 1058. Had the ALJ properly evaluated PA Lance's opinion, the ALJ might have found that opinion persuasive and would have been obligated to include such a limitation in the RFC. Because the vocational expert opined that Plaintiff would

not be employable if she were off task more than 15%, this missing element might have been consequential to the determination of Plaintiff's disability.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 6, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 10, is DENIED, and the Commissioner's decision is REMANDED to the Commissioner for further proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.
Dated: December 5, 2023
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York